UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

P&S PRINTING LLC, *d/b/a/*
MINUTEMAN PRESS, *on behalf of himself and all others similarly situated*,
        Plaintiff,

        v.                                  CASE NO. 3:14-cv-1441 (VAB)

Tubelite, Inc.; and DOES 1-10,
        Defendants.

## RULING ON DEFENDANTS' MOTION TO DISMISS

Plaintiff, P&S Printing LLC doing business as Minuteman Press ("Minuteman"), filed this Complaint on October 1, 2014 as a proposed class action against Tubelite, Inc. ("Tubelite") alleging a violation of the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Protection Act of 2005, 47 U.S.C. §227 (the "TCPA"). Compl., ECF No. 1.  According to the Complaint, Tubelite is "a company that specializes in eco-efficient storefront, curtain wall and entrance systems." *Id.* ¶ 5.  Plaintiff alleges that Tubelite sent an unsolicited advertisement to its fax on August 13, 2014. *Id.* ¶¶ 13-15.  The TCPA prohibits individuals from sending unsolicited commercial advertisements via fax to others, unless they have a pre-established business relationship and the advertisement includes an opt-out notice that complies with the statute.  47 U.S.C. § 227(b)(1)(C).  Before the Court is Defendant's Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  ECF No. 13. For the following reasons, the Court **GRANTS** the Defendant's Motion to Dismiss.

1

**I.      FACTUAL ALLEGATIONS**

Plaintiff alleges that the unsolicited fax from Tubelite was a letter with the subject-line "DFG-2014 Labor Day Schedule" from Tony Evans, who based on the fax itself that is attached to the Complaint as an exhibit, appears to be a "Client Services Manager" at Tubelite.  Ex. A to Compl., ECF No. 11.[1]  The letter was addressed to "Big Horn Masonry" at an address in Fort Collins, Colorado.  *Id.*  It informs the recipient that Tubelite will be closed on Labor Day and provides a revised delivery schedule for the holiday.  *Id.*  It also notes that "Tubelite continues its commitment to provide you with the best service possible" and thanks the recipient for their "continued support and help in allowing [Tubelite] to provide [them] with this exceptional service."  *Id.*  At the top of the letter, the logo for Tubelite contains the word "dependable" and identifies them as "leaders in eco-efficient storefront curtainwall and entrance systems."  *Id.*

The Complaint alleges that Tubelite's conduct violated the TCPA because (1) Minuteman did not authorize Tubelite to send the fax, (2) nor did it have a business relationship with Tubelite before this fax was sent.  Compl. ¶¶14-15, ECF No. 1.  It further alleges that (3) the fax was an advertisement that did not have a provision explaining how the recipient could "opt-out" or stop receiving the fax, as required by the statute and Federal Communications Commission ("FCC") regulation.  *Id.* ¶¶11-12, 16.  Minuteman claims that these three factual allegations establish that Tubelite negligently violated of the TCPA and, accordingly, seeks damages and injunctive relief.  *Id.* ¶¶19, 30-32.

Minuteman indicates in the Complaint that it will seek to represent a class composed of all persons who received "substantially similar" faxes from Tubelite.  *Id.* ¶¶

---

[1] The fax itself is attached to this opinion, at the end of the text.

2

17-18. It alleges that Tubelite regularly sent similar faxes to others and "[u]pon information and belief," that it has sent fax advertisements to "hundreds of persons or entities without providing the complete opt-out notices required by the federal regulations." *Id.* ¶¶ 20, 23.

## II. STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusion," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement. *Bell Atl. Corp. v. Trombly*, 550 U.S. 544, 555, 557 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). In determining whether the plaintiff has met this standard, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party*. In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

In considering a motion to dismiss, the Court may consider only "facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citation

3

omitted). Minuteman has filed three exhibits with the Court. One is the fax Tubelite sent on August 13 and is attached to the Complaint, Ex. A, ECF No. 11, the others are pages from Tubelite's website and are attached to the Opposition to the Motion to Dismiss, Exs. A-B, ECF Nos. 19-1, 19-2. Because the fax Tubelite sent is attached to the Complaint as an exhibit and the Plaintiff explicitly incorporated it into the Complaint, the Court will consider the fax itself. *See* Compl. ¶13, ECF No. 1; *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985) ("The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference.") (citations omitted); *Mangiafico v. Blumenthal*, 358 F.Supp.2d 6, 9-10 (D. Conn. 2005) (internal quotation marks omitted) (citing *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)) (considering documents "incorporated by reference" into the pleadings in evaluating a motion to dismiss); *Cortland Line Co., Inc. v. Orvis Co., Inc.*, No. 97-CV-1294, 1997 WL 808608, at *2 (N.D.N.Y. Jan. 5, 1997) ("Courts in this circuit may consider documents attached to the complaint as exhibits or incorporated therein by reference [in resolving a motion to dismiss]") (citations omitted).

Under the same analysis, the Court cannot and will not consider the exhibits that Minuteman attached to its Opposition to the Motion to Dismiss. Exs. A-B, ECF Nos. 19-1, 19-2. These exhibits are pages from Tubelite's website. Minuteman has not shown that it relied on these documents in drafting its Complaint, it did not refer to them in the Complaint nor did it attach them as exhibits. *See Cortland Line Co., Inc.*, 1997 WL 808608, at *3 (refusing to consider exhibits attached to a motion to dismiss that were not attached as exhibits to the complaint or otherwise incorporated into the complaint by

reference).  Thus, in evaluating the Motion to Dismiss, the Court will consider all allegations made in the Complaint and the fax sent by Tubelite to Minuteman.

### III. DISCUSSION

It is undisputed that, if the fax Tubelite sent to Minuteman was not an "unsolicited advertisement," Minuteman has failed to state a claim under the TCPA.  Def.'s Mot. To Dismiss 1-2, 5, ECF No. 13-1; Pl.'s Opp. 3, ECF No. 19.  The TCPA defines "unsolicited advertisement" to mean "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."  47 U.S.C. § 227 (a)(5).[2]  Tubelite argues that Minuteman has not alleged facts sufficient to indicate that the fax is an advertisement and that the fax itself is not an advertisement because it "does not advertise the commercial availability of property, goods, or services" but rather is purely informational, "simply informing recipients that Tubelite will be closed on Labor Day and that the general delivery schedule will be affected due to the holiday."  Def.'s Mot. to Dismiss 2, ECF No. 13-1.  Minuteman argues that the text of the fax itself and the fact that it was sent to a non-customer creates a plausible inference that the fax is an advertisement.  Opp. Br. 5, ECF No 19. Based on a review of the fax itself as well as the facts Minuteman alleges in its Complaint, the Court disagrees and finds that the fax is not an "unsolicited advertisement" within the meaning of the TCPA.

---

[2] Congress enacted the TCPA to balance "individuals' privacy rights, public safety interests, and commercial freedoms of speech in trade" with "the privacy of individuals."  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, §2(9), 105 Stat. 2394, 2394 (1991).  It was passed to prevent the costs of fax-based advertising from being unfairly transferred to the recipients and recognized the costs to the recipients of receiving unsolicited advertisements via fax.  See Missouri ex rel. Nixon v. Am. Blast Fax, Inc., 323 F.3d 649, 652-53 (8th Cir. 2003) (summarizing the Act's legislative history).

In interpreting the meaning of "unsolicited advertisement," the Court begins with the text of the statute itself. *See Louis Vuitton Malletier S.A. v. LY USA, Inc.,* 676 F.3d 83, 108 (2d Cir. 2012) ("[W]ith any question of statutory interpretation, we begin with the text of the statute to determine whether the language at issue has a plain and unambiguous meaning… If [ ] the plain meaning is ambiguous, we may consult other sources.") In addition, the Court may also consider interpretive guidance provided by the FCC, the administrative agency that is responsible for issuing regulations implementing the TCPA.  47 U.S.C. § 227(b)(2) ("[t]he Commission shall prescribe regulations to implement the requirements of this subsection"); *see generally* Rules and Regulations Implementing the TCPA; Junk Fax Prevention Act of 2005*,* 71 Fed. Reg. 25967 (May 3, 2006) (amending 47 C.F.R. pt. 64).

Because the statute is not ambiguous and defines the term "unsolicited advertisement," the FCC's interpretations are not controlling on this Court under *Chevron v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984), instead, they constitute a body of experience and informed judgment which courts and litigants may turn to for guidance.[3]  *See N.B. Indus. v. Wells Fargo & Co.*, No. C 10-03203 LB, 2010 WL 4939970, at *5 (N.D. Cal. Nov. 30, 2010) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)) (noting that the statute is not ambiguous as to the meaning of "unsolicited advertisement" and is entitled to *Skidmore* rather than *Chevron* deference), *aff'd,* 465 F. App'x 640, 643 (9th Cir. 2012); *Physicians Healthsource, Inc. v. Janssen Pharms, Inc.*, No. 12-2132 (FLW), 2013 WL 486207, at * 3 (D.N.J. Feb. 6, 2013) (same); *see also Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F.Supp.2d 272, 282

---

[3] Moreover, the definition of "unsolicited advertisement" in the FCC regulations mirrors the statute and does not clarify any ambiguity.  *Physicians Healthsource, Inc. v. Janssen Pharms, Inc.*, No. 12-2132 (FLW), 2013 WL 486207, at * 3 (D.N.J. Feb. 6, 2013) (citations omitted).

(S.D.N.Y. 2013) (citing *United States v. Mead Corp.*, 533 U.S. 218, 229-31 (2001) ("[I]n resolving the matter of whether the faxes at issue constitute advertising it is appropriate for the Court to adopt a reasonable construction of the TCPA promulgated by the [FCC].") (internal quotation marks omitted and alterations in the original).

As noted above, the Act itself defines an advertisement as something that "advertises" the commercial availability or quality of goods or services. Black's Law Dictionary defines "advertisement" as a "commercial solicitation" or "an item of published or transmitted matter made with the intention of attracting clients or customers." *Black's Law Dictionary* 65 (10th ed. 2014). Courts have found that to constitute an advertisement under the TCPA, the document does not need to make an "overt sales pitch" so long as it "promotes the commercial availability of the Defendant's goods or services." *Green v. Time Ins. Co.*, 629 F.Supp.2d 834, 837 (N.D. Ill. 2009) (citation omitted); *St. Louis Heart Ctr., Inc. v. Caremark LLC*, No. 4:12CV2151 TCM, 2013 WL 9988795, at *3 (E.D. Mo. Apr. 19, 2013) (citation omitted). "Messages regarding new or additional business would… be covered by the [TCPA]," but those relating to existing or ongoing transactions are not. Rules and Regulations Implementing the TCPA*,* 71 Fed. Reg. at 25973.

The FCC has indicated that faxes containing "only 'information, such as industry news, articles, legislative updates, or employee benefit information'" are not advertisements. *Bais Yaakov of Spring Valley*, 936 F.Supp.2d at 282 (quoting Rules and Regulations Implementing the TCPA, 21 F.C.C. Rcd. 3787, 3814 (2006) (identical to the version of the rule available in the Federal Register)). "In analyzing whether a fax crosses the line from 'informational' to 'advertisement,' courts should consider 'whether

the message is an advertisement which tends to propose a commercial transaction,' 'not whether there is some ancillary benefit to either party.'" *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharms. Inc.,* No. 3:14-cv-405 (SRU), 2015 WL 144728, at *3 (D. Conn. Jan. 12, 2015) (citations omitted); *see also Bais Yaakov of Spring Valley,* 936 F.Supp.2d at 282 (noting that if a document's "primary purpose is informational, rather than to promote commercial products, it does not constitute an unsolicited advertisement."). In other words, the relevant inquiry under the TCPA is whether the content of the message is advertising, so allegations about future economic benefit that result from a fax do not transform it into advertising without more. *Boehringer Ingelheim Pharms., Inc.,* 2015 WL 144728, at *3 (citation omitted). Factors relevant to this inquiry include "'whether the communication is issued on a regular schedule; whether the text of the communication changes from issue to issue; and whether the communication is directed to specific regular recipients, *i.e.*, to paid subscribers.'" *Bais Yaakov of Spring Valley*, 936 F.Supp.2d at 282 (quoting Rules and Regulations Implementing the TCPA, 71 Fed. Reg. at 25973).

The FCC has also recognized that documents with only an incidental amount of advertising are not advertisements under the TCPA. *See Boehringer Ingelheim Pharms., Inc.*, 2015 WL 144728, at *3 n.3 (citations omitted). In determining whether advertising is incidental, the FCC suggests examining whether the document is a *bona fide* informational communication (using the three factors identified above), "the amount of space devoted to the informational message, [and] whether the advertising is on behalf of the sender." *Janssen Pharms, Inc.*, 2013 WL 486207, at * 5 (citation omitted); *Boehringer Ingelheim Pharms., Inc.*, 2015 WL 144728, at *3 n.3 (noting that the

appearance of a logo without more does not transform an information message into an advertisement) (citations omitted).

In the Court's view, this fax's primary purpose, on its face, was to communicate information to current customers about a change in delivery schedule due to the Labor Day holiday. It is difficult to construe the message otherwise. Under the FCC factors, updates on delivery schedules are inherently informational because they are sent on a regular schedule, they change each time they are sent (based on the holiday or schedule change in question), and generally target current customers not new ones. Although it is true that the message could apply to new customers, by providing them with delivery dates so they could plan an order accordingly, attracting new customers is not its primary purpose.

This delivery schedule message does not constitute an "advertisement" as a matter of law, because it does not tend to propose a commercial transaction and does not appear on its face to have been sent based on a commercial pretext.[4] *See Lutz Appellate Servs., Inc. v. Curry*, 859 F.Supp. 180, 181 (E.D. Pa. 1994) (fax announcing existence of job openings is not an advertisement); *Janssen Pharms., Inc.*, 2013 WL 486207, at *5 (finding that a fax that notifies the recipient of the reclassification of a drug does not constitute an advertisement). The fact that the fax was received by Minuteman, a non-customer, cannot transform the content of this message, which is informational, into an advertisement without more. *See* 47 U.S.C. §227(a)(5) (defining "advertisement" as "any material advertising the commercial availability or quality of any property, goods or services."); *see also Boehringer Ingelheim Pharms., Inc.,* 2015 WL

---

[4] Indeed, it seems far more plausible at this stage that the fax was sent accidentally to Minuteman, instead of the named addressee, Big Horn Masonry.

144728, at *3 (noting that the relevant inquiry under the TCPA is whether the fax's content is commercial).

Minuteman also emphasizes the importance of the use of the abbreviation "DFG" in the fax. Opp. Br. 4, 6, ECF No. 19. According to Exhibit A to its Opposition to the Motion to Dismiss, Ex. A, ECF No. 19-1, which was pulled from Tubelite's website, Minuteman believes that "DFG" means "damage free guarantee" and argues that the use of this term renders the fax advertising. However, the definition of this term is not alleged in the Complaint, and as noted above, the Court cannot consider the exhibits offered by Minuteman because they were not attached to the Complaint or otherwise incorporated into it. *See Cortland Line Co., Inc.*, 1997 WL 808608, at *3.

Moreover, Minuteman does not allege, nor can it, that a non-customer receiving this fax would understand what "DFG" means. Indeed, this term on its face is a term of art that would be meaningless to the average layperson who was not already familiar with Tubelite's services. The abstruse nature of this term undermines any inference that this fax was sent to advertise the commercial availability or quality of Tubelite's services. Minuteman argues that the fax contains the URL address of Tubelite's website, where a definition for "DFG" can be found. But Tubelite's fax does not contain any indication that the website contains a definition of DFG and does not otherwise direct a recipient to go there. It is simply not plausible that the presence of Tubelite's web address alone makes "DFG" a comprehensible term or otherwise renders the fax an advertisement. *See N.B. Indus.*, 2010 WL 4939970, at *4 (finding that a fax is "not rendered 'advertisement[ ]' merely by the inclusion of logos and website addresses.") (citation omitted).

In a Notice of Additional Authority filed prior to oral argument, ECF No. 37, Minuteman correctly notes that some courts have ultimately found that the factual context surrounding a fax, including whether it was part of the defendant's marketing strategy, is relevant to determining whether it is an advertisement under the TCPA. *See e.g., Physicians Healthsource, Inc. v. Janssen Pharms., Inc.,* Civ. No. 12-2132 (FLW-TJB), 2015 WL 3827579, at *4-6 (D.N.J. June 19, 2015) (considering the factual context such as the timing of the fax and whether it was part of the defendants' overall marketing campaign to determine whether a fax was an advertisement in deciding a motion for summary judgment). It argues that the relevance of contextual information means more discovery is warranted. However, Minuteman has not alleged, and admitted at oral argument that it could not at this stage, any contextual facts that raise a plausible inference that the fax was considered an advertisement by Tubelite or anyone else. *Twombly* and *Iqbal* require that Minuteman plead specific facts showing that it is entitled to more discovery. *See Vent v. Mars Snackfood U.S., LLC,* 611 F. Supp.2d 333, 340-41 (S.D.N.Y. 2009) (rejecting a plaintiff's argument that more discovery was needed to respond to a motion to dismiss and noting that under *Twombly* "a plaintiff must include sufficient factual allegations to raise a right to relief above the speculative level."); *see also Brown v. City of Harrodsburg Kentucky,* Civil No. 5:14-cv-390-JMH, 2015 WL 1481547, at *2 (E.D. Ky. Mar. 31, 2015) (rejecting plaintiff's argument that more discovery was needed to defeat a motion to dismiss because "[t]his is not the law [and] [b]efore discovery, the complaint must, at least, contain facts upon which a plausible claim can be based.") (citation omitted). In addition, one of the crucial facts to the Court's analysis in *Janssen Pharmaceuticals* was that the fax in that case contained

stale information, which raised an inference that it did not in fact have an informational purpose. *Id.* Here, the fax was sent a few weeks before Labor Day and discussed a Labor Day schedule; it cannot reasonably be said to contain stale information. Without alleging more, Minuteman has failed to plausibly state a claim under the TCPA.

Moreover, any phrases or images in the fax that could be considered "advertisements" are merely incidental and are not large enough or integral enough to the document's purpose to convert it into an advertisement. There are two aspects of the message that can be considered promotional in nature. First, there are references to Tubelite providing "the best service possible" and "exceptional service." However, these statements are made in the context of seeking to continue a relationship with a client, not attracting new ones. Second, Tubelite's logo uses positive words like "dependable" and "leaders." While Tubelite may experience some incidental benefit of having its logo and a few positive phrases on this communication, the mere presence of a logo on a document does not transform that entire document into advertising under the TCPA. *See Holmes v. Back Doctors, Ltd.*, 695 F.Supp.2d 843, 851 (S.D. Ill. 2010) (holding that the fact that one-seventh of a fax consisted of advertising could not convert that entire document into an advertisement under the TCPA); *N.B. Indus., Inc. v. Wells Fargo & Co.*, 465 F. App'x 640, 643 (9th Cir. 2012) (finding that "de minimis advertising" including logos that constituted a "very low" percentage of the message were "insufficient to transform faxes that were largely permissible into prohibited communications [under the TCPA]"); *Janssen Pharms., Inc.*, at *5 (finding that use of Defendants' name and marketing logos was insufficient to transform an otherwise informational fax into an advertisement).

**IV.   CONCLUSION**

For all of the foregoing reasons, the Court finds that the fax sent by Tubelite to Minuteman is not an "advertisement" as defined under the TCPA. Accordingly, Tubelite's Motion to Dismiss, ECF No. 13, is **GRANTED** and the case is dismissed in its entirety. The Clerk is directed to enter judgment for the Defendant and close the case.

**SO ORDERED** this 17th day of July 2015, at Bridgeport, Connecticut.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge



**LEADERS IN ECO-EFFICIENT STOREFRONT, CURTAINWALL AND ENTRANCE SYSTEMS**

Wednesday, August 13th, 2014

<<BIG HORN MASONRY>>
<<6521 EAST COUNTY RD 44>>
<<FORT COLLINS>>, <<CO>><<80524>>

## DFG — 2014 Labor Day Schedule

*Tubelite will be closed on Monday, September 1st for the Holiday.*

Dear Valued Client:

Tubelite continues its commitment to provide you with the best service possible.
We have adjusted the DFG schedule due to the upcoming holiday.

Please notify your Client Development Manager promptly with any concerns you may have with this schedule.

### YOUR DELIVERY SCHEDULE

|  | **NORMAL** | **2014 Holiday Schedule** |
|---|---|---|
| **CUT-OFF DAY** is | <<Tuesday, August 26, 2014>> | <<Monday, August 25, 2014>> |
| **LOAD DAY** is | <<Thursday, August 28, 2014>> | <<Wednesday, August 27, 2014>> |
| **DELIVERY DAY** is | <<Tuesday, September 02, 2014>> | <<Wednesday, September 03, 2014>> |

Thank you for your continued support and help in allowing us to provide you with this exceptional service.

Sincerely,

Tony Evans
Client Services Manager

800.866.2227 • Fax 877.299.2414 • www.tubeliteinc.com • 3056 Walker Ridge Drive NW, Suite G, Walker, Michigan 49544

Peter Sandler